597 So.2d 147 (1992)
STATE of Louisiana, Plaintiff-Appellee,
v.
Eddie BORDELON, Defendant-Appellant.
No. K-91-1058.
Court of Appeal of Louisiana, Third Circuit.
April 2, 1992.
Writ Denied July 1, 1992.
*148 Charles A. Riddle, III, Marksville, for defendant/appellant.
J. Edward Knoll, Marksville, for plaintiff/appellee.
Before GUIDRY and DOUCET, JJ., and MARCANTEL, J. Pro Tem.[*]
BERNARD N. MARCANTEL, Judge Pro Tem.
The issues in this case are whether the trial court erred (1) in denying a pretrial motion to suppress statements made by defendant, Eddie Bordelon; (2) in finding that defendant had knowingly, voluntarily and intelligently waived his Miranda rights; (3) in finding that there was no substantial interruption between the statements made by defendant as to require a readvisement and waiver of Miranda rights; and (4) in failing to allow the defense to offer Louis Decuir, a psychiatric social worker, as an expert in the field of psychiatric social work. This case is before us on remand by *149 the Louisiana Supreme Court from this court's previous denial of defendant's writ application. The Supreme Court granted defendant's writ application and remanded the case to this court for the purpose of briefing and opinion. 591 So.2d 704. (La. 1992) We deny the writ in part and grant same in part and remand.

FACTS
Phillip Bordelon, defendant's father, was shot and killed while hunting on December 31, 1989. Defendant was brought to the Avoyelles Parish Jail at 2:00 A.M. on January 1, 1990, and was interviewed concerning the facts surrounding his father's death. At this time, Detective Richard Bordelon read defendant his Miranda rights in the presence of Detective Clint Lemoine and defendant's uncle, Ray Mayeaux. Additionally, defendant signed a waiver of rights form. Ray Mayeaux was permitted to remain in the room for the entire interview. Defendant was interviewed again at 1:00 P.M. that same day.
After defendant's statements were taken on January 1, 1990, defendant was seen by a psychiatrist, Dr. Puvadda, and thereafter admitted to Huey P. Long Regional Psychiatric Center with a provisional diagnosis of atypical psychosis versus brief reactive psychosis. On February 28, 1990, the principal diagnosis of defendant's condition was schizophreniform disorder.
On March 7, 1990, defendant was indicted on second degree murder and, after defendant entered a plea of not guilty and not guilty by reason of insanity, Dr. F. E. Harrington, a certified psychiatrist, and Dr. F.R. Bordelon, Avoyelles Parish Coroner, were appointed to serve on the sanity commission. A sanity hearing was held on April 11, 1990, in which defendant was pronounced incapable of assisting in his own defense and incompetent to stand trial. Defendant was committed to Feliciana Forensic Facility and was admitted on December 18, 1990, and discharged on May 6, 1991. On June 26, 1991, a second sanity hearing was conducted in which defendant was found capable of assisting in his defense and competent to stand trial. Defendant filed a motion to suppress the statements made by him on January 1, 1990, which the trial court denied. The denial of defendant's motion to suppress is the subject matter of the application presently pending before this court.

LAW
Defendant contends that the statements made by him on January 1, 1990, were made without a knowing, intelligent and voluntary waiver of his Miranda rights because he was suffering from a mental disorder and is a borderline retardate. At the motion to suppress hearing, defendant attempted to introduce the testimony of Louis Decuir, a psychiatric social worker with the Mental Health Clinic in Marksville, as an expert in the field of psychiatric social work. This was denied by the trial court. Defendant also contends that the two statements made on January 1, 1990, were made approximately eleven hours apart and this substantial interruption of time required a restatement of his Miranda rights.
Before the State may introduce into evidence what purports to be a confession or a statement of a defendant, the State must first affirmatively show that the confession or statement was freely and voluntarily given and was not made under the influence of fear, duress, menaces, threats, inducements or promises. La. C.Cr.P. art. 703(G); La.R.S. 15:451; State v. Benoit, 440 So.2d 129 (La.1983); State v. Ashworth, 554 So.2d 271 (La.App. 3 Cir. 1989), writ den., 561 So.2d 113 (La.1990). In addition, if the statement was made during custodial interrogation, the State must prove that the accused was advised of his Miranda rights and intelligently and voluntarily waived those rights. La. Const. Art. 1, § 13 (1974); Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); State v. Coleman, 395 So.2d 704 (La.1981).
To meet its burden, the State may rely on the presumption of sanity provided in La.R.S. 15:432. State v. Ashworth, supra. Because of this presumption, defendant has the burden of proving a mental *150 defect which renders him unable to understand his rights and, therefore, incompetent to waive them. State v. Glover, 343 So.2d 118 (La.1976), on rehearing. The State is not required to negate a defendant's mental abnormality, but it must prove beyond a reasonable doubt that the confession or statement a defendant gave was voluntary. Defendant must then prove the existence of a mental defect or disorder that prevented his confession or statement from being intelligently and voluntarily made. The law is clear that, when the issue is whether an accused's level of intellectual capacity precludes him from effectively understanding the essential nature of his right to remain silent, to have assistance of counsel, and of the consequences of his speech, much discretion is accorded to the trial court's determination. State v. Lefevre, 419 So.2d 862 (La.1982); State v. Mire, 492 So.2d 180 (La.App. 3 Cir.1986), writ den., 496 So.2d 347 (La. 1986).
The State introduced the testimony of Dr. Francis Harrington, a psychiatrist, who stated that, after listening to the tape of the statements made by defendant, he concluded that defendant was capable of understanding the Miranda rights and the waiver of rights form. Additionally, the trial court listened to the tape of defendant's statements and concluded that there was nothing in the tape to suggest that defendant did not understand his rights.
The Miranda rights were not recorded; however, Deputy Bordelon testified that it was not standard procedure to record the Miranda warnings as part of the statement at the time of defendant's arrest. However, it is clear that the Miranda warnings were in fact read to defendant since everyone present, including defendant's uncle, Mr. Mayeaux, stated that the Miranda warnings were in fact read.
In an attempt to prove the existence of a mental defect or disorder that prevented his confession or statement from being intelligently and voluntarily made, defendant offered the testimony of Louis Decuir and attempted to qualify him as an expert in the field of psychiatric social work. Louis Decuir testified at the hearing that he was the manager of the Mental Health Clinic in Marksville and has been employed with this clinic for approximately ten years. Mr. Decuir has a Master's Degree in Social Work, specializing in psychiatric social work, from Louisiana State University, and, after receiving his degree, he worked at Central Hospital. Previously, Mr. Decuir has been recognized in the Twelfth Judicial District Court as an expert in the field of psychiatric social work. Mr. Decuir also testified that, as a Board Certified Social Worker by the State of Louisiana, he can diagnose and treat patients. After the defense tendered Mr. Decuir as an expert in the field of psychiatric social work, the questioning of Mr. Decuir continued concerning his expertise and his treatment of defendant. During questioning, Mr. Decuir stated that he was not defendant's case worker, that he saw defendant only once and did not remember seeing him, without referring to his notes, the time before the death of defendant's father. Defense counsel asked Mr. Decuir, "... and what did youwhat was your opinion at that time?" The State objected to this question and the trial court sustained the objection. The trial court indicated at several points in the record that he did not know whether a board certified social worker or a psychiatric social worker could make a diagnosis. The trial judge sustained the State's objection on his belief that a psychiatric social worker was not qualified to make a diagnosis, although the record does not indicate that the trial judge ever accepted or rejected Mr. Decuir as an expert in the field of psychiatric social work. By stipulation of counsel, the trial court accepted into evidence the mental records of defendant from Avoyelles Mental Health, including the record from which Mr. Decuir testified.
The issue in this case is the same as in State v. Glover, supra, in which the Louisiana Supreme Court stated at page 128: "The crucial issue is not simply whether the defendant was `insane,' but whether he suffered from a mental illness or defect which, under the circumstances, *151 prevented his statements from being voluntary." A trial court must review the circumstances leading up to a statement to decide if the confession was freely and voluntarily given. The trial court should consider all relevant testimony concerning any mental illness from which defendant may have been suffering at the time of his statements. The defense attempted to introduce the testimony of Louis Decuir concerning his opinion of defendant's mental condition days before any statements were made by defendant. The record is sufficient to recognize Louis Decuir as an expert in the field of psychiatric social work and, as such, to allow his testimony concerning his evaluation of defendant. In this respect, the trial court erred. This information is relevant to the issue of whether defendant's statements were freely and voluntarily given and should have been considered by the trial court in determining whether defendant suffered from mental illness at the time of his statements to such a degree as to render them invalid.
Defendant's last contention is that he should have been readvised of his Miranda rights when questioned for a second time on January 1, 1990. The Louisiana Supreme Court, in State v. Harvill, 403 So.2d 706 (La.1981), specifically rejected a requirement that Miranda rights be repeated before each separate interrogation period as such a requirement would "quickly degenerate into a formalistic ritual." The readvisement of Miranda rights is only necessary following a significant break in the interrogation process. There was no substantial interruption between the statement defendant made at 2:00 A.M. on January 1, 1990, and the statement he made at 1:00 P.M. on January 1, 1990, so as to require a restatement of defendant's Miranda rights.
For the reasons assigned, this court affirms that portion of the trial court's ruling rejecting the necessity of readvisement of Miranda rights between the first and second interrogation. However, we vacate and set aside the trial court's denial of defendant's motion to suppress any statements made by defendant and remand to the trial court for the reopening of the suppression hearing to permit both the State and the defendant an opportunity to present such additional evidence as they deem necessary relevant to the issue of any mental illness from which defendant may have been suffering at the time of his statements. This evidence should include, but is not limited to, the opinion testimony of Louis Decuir. If any mental illness is established to have existed at the time of the statements, the trial court is to determine whether the mental illness prevented the statements from being voluntary.
WRIT DENIED IN PART AND IN PART MADE PEREMPTORY AND REMANDED.
NOTES
[*] Judge Bernard N. Marcantel participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.